BENJAMIN FISH, CHARLES G. GREEN and GEORGE S. GREEN
*v.* WILLIAM POTTS, trustee, and others.

The Trenton Del. Falls Co., by lease dated December 16, 1835, demised to Fish and others, their heirs and assigns forever, the right of drawing a certain quantity of water from the raceway of the said Company, for the annual rent of $500, in quarterly payments. The said lessors, by writing under seal, endorsed on the said lease, and dated December 19, 1835, granted and assigned the said lease, and all the rent due and to grow due thereon, to W. P., in trust, first, for the payment of the interest due and to become due to certain creditors of the said lessors upon the several principal sums due to the said creditors ; next to pay to the said lessors, from time to time, as the rent should be received, the balance which should remain in his hands after paying the interest aforesaid; and, thirdly, upon the payment of the said debts by the said lessors, to re-assign the said lease to them. On the 9th of June, 1843, the said Company, the lessors, became insolvent, and receivers were appointed, with authority to sell the estate, franchises and works of the said Company. On the 15th of February 1844, an act of the Legislature was passed, by which the receivers were authorized to sell the estate &c., of the said Company, at public sale, *free of all incumbrances ;* the purchasers at the said sale to hold as a joint stock company, in the same manner as the original stockholders held; that, after such purchase, the said company should be known as "The Trenton Water Power Company," and by that name exercise all its corporate powers; but that nothing in the said act should be construed to affect the rights of the creditors of said Trenton Del. Falls Company to receive their distributive share of the proceeds of the said sale according to law, *or to invalidate any existing leases made by the said Company or assignment thereof.* On the 20th of February, 1844, the receivers sold, free from all incumbrances; and the sale was confirmed by the Court, and a deed ordered; which was accordingly made to the purchaser; who, with his associates, organized as a corporation under the name of "The Trenton Water Power Company."

*Held,* That "The Water Power Company" were entitled to the rents accruing on the said lease after the said purchase at the reciever's sale; that the words "assignment thereof," in the clause, in the act of February 15th, 1844, providing that nothing therein contained should be construed to invalidate any existing leases or *assignment thereof,* mean, assignment by the lessee or lessees, and not assignment by the lessor.

On the 24th of August, 1846, Benjamin Fish, Charles G. Green and George S. Green exhibited their bill,, stating that "The Trenton Delaware Falls Company" was, by act of the Legislature, passed February 16, 1831, incorporated, with power to cut a raceway and create a water power, in the manner specified in the said act, to be used for mills and manufacturing purposes.

That, by a certain indenture of lease, dated December 16, 1835, made by and between the said Company, of the one part, and Benj. Fish and Chas. G. Green, two of the complainants, and° Wm. Grant and Wm. G. Cook, of the other part, the said Company demised and leased to the said Benj. Fish, Chas. G. Green, Wm. Grant and Wm. G. Cook, and their heirs and assigns, the right and privilege of cutting a sufficient opening or passage through the bank of the Company's main raceway, whereby water might be drawn therefrom, together with the right and privilege of drawing therefrom a certain quantity of water, in the manner and for the purposes in the said lease specified; To have and to hold to the said lessees, their heirs and assigns forever; yielding and paying therefor to the said Company the yearly rent of $500, in equal quarterly payments, on the first days of January, April, July and October; the first of which payments was to be made on the 1st of January then next.

That the said Company, by an assignment under seal, endorsed on the said lease, dated December 19, 1835, after reciting that the said Company were indebted to S. R. Hamilton, Thomas J. Stryker and William Potts, in the sum of $500 each; to J. S. Hill in $500; to John Whitaker in $500; to John McKelway in $2,000; to Timothy Abbott in $500; to Nathaniel Potts in $1,000; and to Joseph Trotter in $300; amounting in all to $6,300, borrowed of them by the said Company, to aid in completing their said water power; and were desirous to secure to the said several persons the interest due and to grow due to them, respectively, upon the said several sums of money, until the principal sums should be paid; did, in consideration of the matters above set forth, and of $1 to them paid by William Potts, grant, assign and set over unto the said William Potts, the said indenture of lease and all the rent due and to grow due thereon, as it should become due and payable; To Have and to Hold the same, and to collect and receive the said rents then due and owing, or which might thereafter become due and payable, in trust, in the first place, for the payment of the interest due and to become due to the said Hamilton and others above named, upon

the several sums of money so due to them; in the second place, to pay over to the said Company and to the Treasurer thereof the balance of moneys which should remain in his hands, from time to time, as the same should be received from the lessees named in the said lease, their heirs, executors, administrators or assigns, after satisfying the interest as aforesaid; and in the third place, upon full payment and satisfaction of the said several debts by the said company or their successors, then to execute a re-assignment of the said lease, and all the rights, powers and interests granted by the said assignment, to the said Company and their successors.

That the said lessees paid, from time to time, to the said Potts, the trustee named in the said deed of assignment, the said rent, as it became due, up to April 1st, 1838; at or about which time all the right, title and interest of the said William Grant and William G. Cook in the said lease were purchased by and transferred to the complainants Benjamin Fish and Charles G. Green, who afterwards sold and transferred an interest therein to the complainants George S. Green.

That the complainants ever since have been and now are in the quiet possession and enjoyment of the rights and privileges demised by the said lease; and have, from time to time, since the said April 1, 1838, paid to the said Potts, trustee as aforesaid, the said rents, up to January 1, 1845.

That John McKelway, one of the persons named in the said assignment, has received full payment of his said debt therein mentioned.

That the said debt from the said Company to the said Nathaniel Potts has been assigned to the said William Potts.

That the said debt from the said Company to the said Joseph Trotter was assigned to the said Timothy Abbott.

That afterwards, on or about the        day of        1845, the said Timothy Abbott died, leaving a will, of which he appointed Charles H. Abbott and George Abbott, executors.

That, the said Company having become indebted unto one Isaac Ivins, for money borrowed of him upon the condition that a further interest in the said lease should be assigned to the said

William Potts, to secure the payment of the interest upon said debt to Isaac Ivins, the said Company was, on or about September 14, 1838, at a meeting of the Board of Managers of said Company, authorized to assign to the said William Potts a further interest in the said lease for the benefit of the said Isaac Ivins, to secure to him the interest on $600, he having advanced that sum for the use of the said Company.

That the said Ivins has, as these complainants are informed and believe, received from the said trustee, from time to time, out of the rents, the interest on the said $600.

That, on or about June 9, 1843, the said Company became insolvent; and James Ewing, Philemon Dickinson and Samuel J. Stryker were appointed by this Court receivers of &c., of the said Company, with full power and authority to sell and convey all the real and personal estate, franchises and works of the said Company.

That, on or about February 20, 1844, the real estate, works and franchises of the said Company were sold by the receivers, at public sale; and that afterwards, on or about March 8, 1844, the said receivers delivered to the purchaser or purchasers thereof a deed for the said real estate, works and franchises.

That by virtue of an act of the Legislature, entitled "An act to relieve the creditors of the Trenton Delaware Falls Company," passed February 15, 1844, the purchasers of the real estate, franchises and works of the said Company were authorized to hold the said real estate, works and franchises in the same manner that the original stockholders held the same. And that by the said act it was also, among other things, enacted and provided, that after said purchase the Company should be known as "The Trenton Water Power Company," and by that name should sue and be sued, and exercise all its corporate powers.

That, under the authority of the said act, "The Trenton Water Power Company" was organized and went into operation; and that "The Trenton Water Power Company" now hold, possess, occupy and enjoy the real estate, works and franchises of the said "The Trenton Delaware Falls Company;" and by reason thereof claim to be the landlords of the complainants, in the

place of the last mentioned Company, and to be entitled to collect and receive the rents due and to become due upon the said lease.

That the complainants have been informed and believe, that Thomas J. Stryker, one of the persons mentioned in the said assignment, and for whose benefit the same was made, has assigned and transferred all his interest in and under said lease and assignment thereof unto the said " The Trenton Water Power Company," or to James M. Redmond, the President of the said Company, for their use.

That the said William Potts, to whom the said lease was assigned in trust as aforesaid, claims to be entitled, in behalf of himself and of the said S. R. Hamilton, Jasper S. Hill, John Whitaker, Isaac Ivins, and C. H. Abbott and George Abbott, executors &c. of Timothy Abbott, deceased, to collect and receive the whole amount of the rents due and to become due upon the said lease, until they receive full payment and satisfaction of their said several debts; and to apply the said rents, when received, to the payment of the principal as well as the interest of their said debts, until the same shall be fully paid and satisfied.

That, on the other hand, the said " The Trenton Water Power Company" claim to be entitled to collect and receive the whole or a large part of the rents due and to become due upon the said lease; and insist that the said Company, having purchased the real estate, works and franchises of the said " The Trenton Delaware Falls Company," have become and now are the landlords of these complainants, and that their right to receive the said rents due and to become due upon the said lease is in no wise affected or impaired by the assignment of the said lease to the said William Potts, and that the said assignment is not valid against or binding upon the said " The Trenton Water Power Company;" but that that Company are entitled to hold the said lease free and clear of the said assignment, and to receive the rents due and to become due thereon, as though the said assignment had never been made, and insist that if the said assignment is at all valid and binding on them, then, that said William

Potts, trustee as aforesaid, is entitled, under the said assignment,. to receive only so much, and no more, of the rents as may be sufficient and necessary to pay the interest upon the several debts mentioned in the said assignment, and which have not been paid and satisfied or assigned to the said " The Trenton Water Power Company;" and that that Company are entitled *to* receive the residue of said rents, after deducting therefrom so much as may be necessary to pay the interest aforesaid; and that the said rents ought to be apportioned between the said William Potts, trustee as aforesaid, and the said " The Trenton Water Power Company;" and that so much of the said. rents as belongs to that Company should be paid by these complainants directly to the Treasurer of that Company, and not to the said Potts, trustee as aforesaid.

And the complainants state, that James M. Redmond, the President of that Company, has at sundry times informed the complainants, or some of them, of the claim of the said " The Trenton Water Power Company" to the said rents, and forbid the complainants to pay the same to the said William Potts, trustee as aforesaid.

That the said " The Trenton Delaware Falls Company," by the said lease, did covenant and agree, that they would at all times maintain and repair their raceway and the banks thereof; and if at any time a breach should happen, they would repair the same within as short a time as the nature of the case would admit; and if not repaired within thirty days, then, that after the expiration of the said thirty days, the rent should abate until the same should be repaired; and that they would be liable to no other damages for any stoppage of the water to be occasioned by the building, clearing out or repairing the said raceway, except the deduction of the rent after the end of the said thirty days.

That, during the summer of 1845, " The Trenton Water Power Company" were engaged about three months in widening and repairing the raceway &c., and that the water was stopped during all that time; and that the complainants are entitled to an abatement of the rent during the time of such stoppage, after

the expiration of the first thirty days thereof, amounting to $83.33.

That the complainants have paid the rent up to January, 1845; but that the rent from that time to July 1, 1846, being six quarters, has not been paid; and that six quarters' rent, after deducting therefrom the said $83.33, is now due from the complainants upon the said lease.

That they are, and at all times have been ready and willing to pay the same to whoever shall appear to be entitled thereto; and that they had hoped that the different parties claiming said rent would have settled the dispute between themselves; but that said William Potts, trustee as aforesaid, threatens and intends to proceed at law against the complainants for the recovery of the said rent; and has, as the complainants are informed and believe, placed the said lease in the hands of an attorney for the purpose of instituting proceedings against the complainants. And that the said "The Trenton Water Power Company" also claim the said rent, and refuse to consent that the complainants shall pay the same to the said Potts, trustee as aforesaid; and insist that the complainants shall pay the said rent, or a large part thereof, to the Treasurer of the said Company.

That by reason of the said adverse claims the complainants are unable to ascertain with certainty to which of the said parties the said rents belong; and are advised that the said parties ought to interplead touching their rights to the said rents, in order that the complainants may know to whom the same ought to be paid; and that the defendants should be injoined from commencing any action or actions at law against the complainants in respect to the matters aforesaid.

The bill prays that the defendants may answer, and may be decreed to interplead together; and that it may be ascertained, in such manner as the Court shall direct, to which of the said parties the rent due and to become due upon the said lease belongs and ought to be paid; and that the Complainants may be at liberty to pay the rent now due and to grow due into this Court, which they hereby offer to do, for the benefit of such of said parties as shall appear to be entitled thereto; and that the

defendants may be injoined from suing at law for the rents; and for such further and other relief, &c.

William Potts, trustee as aforesaid, and Hamilton, William Potts, J. S. Hill, J. Whitaker, and C. H. Abbott and George Abbott, executors of T. Abbott, deceased, put in their joint and several answer.

They admit the incorporation of " The Trenton Delaware Falls Company;" and the lease mentioned in the bill; and the assignment thereof to William Potts in trust for the persons, uses and purposes in the bill and in the said assignment set forth ; and the payment of rent as in the bill mentioned, and the assignment by Wm. Grant and Wm. G. Cook of all their interest under the said lease to the said B. Fish and C. G. Greene; and that they afterwards transferred an interest in the lease to G. S. Green. That the complainants have had quiet possession under the said lease; and have paid the rent to January, 1845.

They admit that McKelway's interest in the lease has been extinguished; and that the debt due from the said Company to Nathaniel Potts has been transferred to William Potts; and that Trotter's interest in the lease and assignment thereof was transferred to T. Abbott, since deceased, and is now held by C. H. Abbott and George Abbott, the executors of his will.

They admit that the said Company became insolvent; and that receivers were appointed, with authority &c., as stated in the bill; and that the said real estate, works and franchises were sold, as stated in the bill.

They admit the passage of the " act to relieve the creditors of the Trenton Delaware Falls Company;" and they say they have heard and believe, and therefore admit, that by virtue of the said act, " The Trenton Water Power Company" was organized; and that they now hold, possess, occupy and enjoy the real estate, works and franchises of the said " The Trenton Delaware Falls Company."

They say they have heard and believe, and therefore admit, that the said T. J. Stryker has transferred all his interest in the

said lease and assignment thereof to "The Trenton Water Power Company."

They say that the assignment of the lease to the said William Potts was in consideration of the loaning by these defendants, respectively, to "The Trenton Delaware Falls Company," of the several sums mentioned in the said assignment; which sums were expended by the Managers of the said Company in repairing and improving the works of the said Company, as they are informed and believe; they receiving no other security for the payment of the said principal sums and the interest thereon than the said lease assigned as aforesaid.

They charge that the assignment conveyed to their said trustee the entire rent reserved by the said lease, whether due or to become due, and conferred upon him full power to collect the same. And they deny that "The Trenton Water Power Company" are the landlords of the complainants, or have any right or authority to demand the rent from the complainants, or any part thereof.

They insist that the lease was assigned to their said trustee to secure as well the principal of their said loans as the interest thereon; and that the absolute power of their said trustee to collect the whole of the rent cannot be defeated in any other way than by the full payment and satisfaction to them, respectively, of their said several loans.

They insist that the complainants are bound to pay to their said trustee the entire rent reserved by the said lease, as the same becomes due; and that it is his duty, as fast as he collects the same, to pay thereout the interest which shall be due on the said several sums so loaned as aforesaid, and then to apply the balance remaining in his hands, if any, to the payment of the said principal sums.

They say that by the terms of the said assignment the said trustee was directed, after paying the interest on the principal sums, to pay the balance of money which shall remain in his hands, from time to time, to "The Trenton Delaware Falls Co." and to the Treasurer thereof. And these defendants say that out of this balance "The Trenton Delaware Falls Co." made, as they are informed and believe, some oral provisions for the

payment of some debt due from them, or the interest accruing upon some debt due from them to the said Isaac Ivins ; but these defendants insist, that there was no legal assignment made to the said Ivins ; and that these defendants were not consulted in the making of said arrangement or provision, and had no knowledge thereof at the time it was made ; and that they are not bound thereby ; but that, the said " The Trenton Delaware Falls Co." being no longer competent by themselves or their Treasurer to receive the said balance, the same may rightfully be retained by their said trustee, to be applied in the payment of the principal sums mentioned in the said assignment.

They say that their said trustee has faithfully performed his trust, and has collected the rents for their use, up to January 1, 1845.

They admit the provision in the lease for the abatement of rent on the stoppage of the water ; but whether it was stopped from the complainants' mill for 30 days in any one year since the failure on the part of the complainants to pay their rent, they do not know and cannot answer, but leave the complainants to prove &c.

" The Trenton Water Power Co." put in their answer.

They admit the lease ; and that " The Trenton Delaware Falls Co." assigned the said lease to the said Wm. Potts, in trust, in the first place, to secure the payment of the interest due and to grow due to certain creditors of the said Company ; in the second place, to pay over to the said Falls Co. the balance of money which should remain in his hands from time to time, as the same should be received from the said lessees, after satisfying the interest aforesaid ; and in the third place, upon full satisfaction of the said several debts, then, forthwith to execute a re-assignment of the said lease to the said Company ; but as to date or more particular terms of the said assignment, and the amount of the debts the interest upon which it was intended to secure, and what part thereof is still unpaid, they cannot state, except that they have understood and believe, that McKelway has been paid ;

and that T. J. Stryker has assigned and transferred all his interest in the said assignment to these defendants.

They say they have no knowledge, except from hearsay and the statements of the bill, that "The Trenton Delaware Falls Co." became indebted to Isaac Ivins, and that the President of said Company was authorized to assign to said Wm. Potts a further interest in the said lease for the benefit of said Ivins, to secure to him the interest on $600; but they believe that said Ivins does claim to have an interest in said lease and the rents due and to become due, to secure the interest upon some debt alleged to be due him from the said Company.

They admit the insolvency of said Falls Company, and the appointment of Receivers with full power and authority to sell, convey and dispose of the real and personal estate, franchises and works of the said Company.

They say that at the time of the appointment of the said Receivers the Falls Co. were indebted in an amount greatly exceeding the value of their real and personal estate, franchises and works, to wit, in more than $100,000. That one Robert McCall held a mortgage, duly recorded, upon a large part of the real estate of the said Falls Co., to secure $3,300, part of the purchase money of said real estate. That the Trenton Banking Co. held a mortgage, duly recorded, upon all the lands and raceway of said Falls Co., dated April 2, 1833, to secure $4,000 ; and another mortgage on the same, of the same date, duly recorded, to secure the further sum of $6,700. That the said Banking Co. also had a judgment against said Falls Co., recovered in the Supreme Court, on the 22d May, 1834, for $6,237.50, which was a lien on all the real and personal estate of the said Falls Co. That T. Cadwalader and others had a mortgage, duly recorded, upon all the real estate of said Company north of the Assunpink Creek, dated May 21, 1834, to secure $15,491.47 ; upon all which mortgages and judgments a very large amount of interest had accrued, and which were existing liens, at the time of the alleged assignment of the said lease to the said Wm. Potts, trustee as aforesaid, on the real estate, raceway and property of the said Falls Co.

They say that, subsequent to the date of the alleged assignment of the said lease, to wit, on the 2d June, 1836, the said Falls Co. executed to B. Fish and others a mortgage, to secure $9,227.97, which was duly recorded, and embraced a large portion of the real estate of said Falls Co., inclusive of their raceway. That on the 4th June, 1836, the said Falls Co. executed a mortgage to Armitage Green and others, to secure $7,395.45, which was duly recorded, and embraced the same property covered by the said mortgage given to B. Fish and others. That on the 3d June, 1837, the said Falls Co. executed a mortgage to Samuel J. Stryker, to secure $10,000, on all the real estate of the said Company, which was duly recorded. And that on the 21st February, 1843, the said S. J. Stryker entered up judgment on the bond accompanying said mortgage, in the Common Pleas of Mercer, for $7,935.30, the amount then due on said bond. That on the 23d February, 1843, the said Company executed a mortgage to Richard J. Bond, on all the real estate of said Company, to secure $20,450.74 ; which was duly recorded. That on the 28th February, 1843, three several judgments were recovered against the said Falls Co., in the Supreme Court ; one in favor of Peter T. Smith, for $3,913.03 ; one in favor of Patrick Mahan, for $478 ; and one in favor of Andrew Carrigan, for $2,780.

That all the before mentioned mortgages and judgments were existing liens upon the real estate of said Falls Co. at the time of the appointment of the Receivers ; that large arrears of interest had accrued upon them ; and that, independent of the simple contract debts, not secured by mortgage or judgment liens, they amounted to a sum greatly beyond the real value of all the property of the said Company.

They say that, the Receivers having reported to this Court that it was necessary that the real estate, corporate rights and other property of the said Company should be sold for the payment of debts, an order was made on the 7th November, 1843, directing the Receivers to make sale according to law of all the real estate of the said Company, and all the chartered rights, privileges and franchises belonging to them and appertaining to

their raceways, and all the right, title and interest of the said Company of, in and to the same.  And, the said Receivers having represented to the Legislature that the property of the said Company was incumbered for more than it would bring at public sale ; that it was doubtful whether it could be sold without Legislative aid ; and that the interests of the creditors of said Company would be promoted by a sale of such real estate, franchises and works clear of all incumbrance ; the Legislature, on the 15th February, 1844, passed the act entitled " An act to relieve the creditors of ' The Trenton Delaware Falls Co. ;' " by which act the Receivers were not only authorized to sell the real estate, franchises and works of the said Company at public sale, but were authorized to sell the same free and clear of all incumbrance ; and to make to the purchaser as good and sufficient a title as the said Company had in the real estate, franchises and works, free and clear of all mortgages, judgments or other liens whatever ; the purchasers to hold the said works, franchises and real estate as a joint stock Company, in the same manner as the original stockholders held the same ; that after the said purchase the said company should be known as " The Trenton Water Power Company," and by that name might sue and be sued, have a common seal, and exercise all its corporate powers ; but that nothing in said act should be construed to affect the rights of the several creditors of the said " The Trenton Delaware Falls Company" to receive their distributive share of the proceeds of the said sale according to law, or to invalidate any existing leases made by said Company or assignment thereof.

They admit that, on or about Feb'y 20, 1844, the Receivers did sell all the real estate, works and franchises of the said Falls Co., as stated in the bill, and executed to the purchaser thereof a deed for the same ; and that the purchaser, in pursuance of the said act of the Legislature, organized himself and his associates in said purchase into a corporation by the name of " The Trenton Water Power Company ;" and that these defendants are the same Company, and now hold, possess, occupy and enjoy the said estate, works and franchises, and claim to be the land-

lords of the complainants, in place of said Falls Co., and to be entitled to collect and receive the rents due and to become due from the complainants upon the said lease.

They say that the Receivers sold the said real estate, works and franchises of the said Falls Co. free and clear of all mortgages, judgments or other liens whatsoever, as they were directed and authorized to do ; that said sale was confirmed by this Court, and the deed therefor was made by order of this Court, and the purchase money paid over to the Receivers on the delivery of the said deed ; and that, by the express terms of the said deed and the said act of the Legislature, these defendants hold the said property free and clear from all incumbrances created by the said Falls Co., and subject only to the right, as they submit, of the lessees of the said Falls Co. and the assignees of such lessees to draw water from the raceway of these defendants, in the manner prescribed by their leases, upon their paying the rents, and performing the duties therein reserved, to these defendants.

They admit that said Wm. Potts, in behalf of himself and his *cestuis que trust*, claims to be entitled to collect and receive the whole amount of the rents due and to become due upon the said lease to the complainants, until they receive full payment and satisfaction of their debts ; but these defendants insist that the said Wm. Potts, as trustee as aforesaid, is not entitled to receive the said rents, or any part thereof ; and they admit that they, these defendants, claim to be entitled to the said rents which have accrued since their purchase as aforesaid, and have given notice to the Company of their said claim, and requested them not to pay over the said rents, or any part thereof, to the said Wm. Potts, trustee as aforesaid.

They say that the whole real estate and property of the said Falls Co. was incumbered with mortgage and judgment liens, at the time they made the assignment of the said lease, to an amount which, with the interest and costs accrued thereon, have exhausted the whole of the purchase money, being $150,000, paid for the said real estate and property on the Receivers' sale ; and that the said Falls Co., after the assignment of the said lease, incumbered their real estate and property to a very large

additional amount, by giving other mortgages and contracting debts upon which other judgments were recovered against them, none of which incumbrances so subsequently contracted have ever been paid, except some portion of the judgment of P. T. Smith ; and that it was in consequence of the existence of these large incumbrances, greatly exceeding the value of the works, that the Legislature, upon the representations of the Receivers, passed the act authorizing the sale to be made free and clear of all incumbrances whatever ; and they submit, that the reservation in the said act in favor of the leases of the Falls Co. and the assignment thereof was not intended to set up the said assignment to Wm. Potts, trustee as aforesaid, of the lease made to the complainants as an incumbrance upon the said real estate prior to all the legal incumbrances existing upon the same ; and that the Legislature had no constitutional power to do so if they had so intended.

They submit that the said assignment of the said lease created no legal incumbrance whatever upon the said real estate. And that the said Wm. Potts and his *cestuis que trust* never had any of their claims secured by mortgage or judgment against said Falls Co. ; but were creditors at large, and only entitled, after the sale as aforesaid, to be paid *pro rata* with other creditors at large of said Falls Co., after all the mortgage and judgment creditors were satisfied out of the proceeds of said sale. And that, the whole real estate and property of the said Falls Co. having been sold, as aforesaid, free and clear of incumbrance, and the purchase money exhausted in the satisfaction of existing liens, the said trustee and those whom he represents are not entitled to have their debts charged upon the estate so purchased in the hands of these defendants ; which is, in effect, the claim set up by the said Wm. Potts and those whom he represents.

They admit that the complainants are entitled to a deduction of rent for stoppage of water, for one month and fifteen days, and not for the time claimed by the bill.

*C. S. Green*, for the complainants, to show that a bill of interpleader was their proper course, cited 1 *Story's Pl.*, sec. 293, 5 ;

*Smith's Chan. Pr.* 469, 471; 2 *Hoff. Chan. Pr.* 101, 104; 16 *Ves.* 203; 3 *Green's Ch.* 277.

*S. G. Potts* and *P. D. Vroom* for the Trenton Water Power Company. They cited 2 *Bl. Com.* 218; 1 *Pow. on Mortgages,* 171; *Woodf. Landl.* 83; 3 *Halst. Rep.* 314; 3 *Peters,* 448; *Const. of the U. S.,* art. vii, sec. 10; 6 *Cranch,* 87; 1 *Cond. U. S. Rep.* 172; 3 *Dall.* 386; 1 *Halst. Ch. Rep.* 243.

*B. Williamson* for Wm. Potts, trustee, and those whom he represents.

THE CHANCELLOR expressed an opinion that the Trenton Water Power Company were entitled to the rents.

Whereupon the counsel for Wm. Potts, trustee, and the creditors he represents, applied for a re-hearing; which was allowed.

The cause was re-argued by *Jos. C. Potts* and *B. Williamson* for the said trustee and the creditors represented by him.

And by *Stacy G. Potts* for the Water Power Company.

THE CHANCELLOR.   I see no way in which I could decree that these rents be paid to Wm. Potts, trustee &c., but by declaring the Receivers' sale void; or that it was made subject to incumbrances, and that the purchasers at the Receivers' sale took it subject to all incumbrances, and subject, too, to the pledge, if it be such, of the rents receivable from Fish and Green, to pay the interest of the debts named in what is called the assignment to Potts, trustee &c., of the lease to Fish and Green.

But the Receivers' sale was made free and clear of all incumbrances, and was confirmed by the Court.   It cannot now be disturbed by any action of this Court.   An appeal should have been taken from that decree of confirmation, as the only mode of correcting it if it was wrong.   I cannot now declare that that sale was made subject to incumbrances.

From some facts stated in argument it would seem that, when the act for the sale free from incumbrances was applied for, it was understood by the parties who applied for it that Potts, trustee &c., should not be affected in his right to receive the rents from Fish and Green for the purposes stated in what is called the assignment to him of the lease to Fish and Green; and I can very well imagine that the language used in the proviso of the act was understood by the parties applying for the act, or by those interested in the rents derivable from that lease, to be sufficient to protect Potts, trustee &c., in the receipt of those rents. But I do not see that the Court is at liberty to inquire what any person soliciting the passage of an act, or assenting to its passage, understood to be the meaning of its language. And, again, such understanding would not affect the purchaser at the Receivers' sale, or prior or subsequent mortgages of the property.

The words " assignment thereof," in the clause, in the act of February, 1844, providing that nothing therein contained should be construed to invalidate any existing leases or assignment thereof, mean, assignment by the lessee or lessees, and not, assignment by the lessor.

My conclusion on the re-hearing is the same as on the first hearing—that the Water Power Company are entitled to the rents.

Order accordingly.